IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| William E. Morehouse, | : | |
| Plaintiff | : | Civil Action 2:10-cv-00045 |
| v. | : | Judge Marbley |
| Cynthia Mausser, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |
| | : | |

# ORDER

Plaintiff William E. Morehouse brings this action against defendants alleging that parole-related laws and guidelines violate his rights arising under the Due Process clause, the Ex Post Facto clause, and the Eighth Amendment. This matter is before the Court on plaintiff Morehouse's December 6, 2010 objections to the Magistrate Judge's November 19, 2010 Report and Recommendation that recommended that defendants' September 1, 2010 motions for summary judgment and to stay discovery (docs. 74 & 75) be granted.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation and **GRANTS** defendant motion for summary judgment (doc. 74).

1

I.  Allegations in the Complaint

After Morehouse served the mandatory minimum term of 15 years imposed for his conviction for murdering his girlfriend, he was released on parole. Two years later, he was convicted for shooting a new girlfriend. Since November 1991, Morehouse has been serving an aggregate prison term for the 1974 first degree murder and the 1991 felonious assault of six years to life imprisonment.

The complaint alleges that Ohio's parole laws, policies, administrative regulations, standards, rules, and guidelines in effect since July 1, 1996 as applied to plaintiff William E. Morehouse violate his rights under the Due Process and Ex Post Facto clauses. Compl. at ¶ 2. Changes to the Ohio Administrative Code have resulted in delayed parole eligibility and increased punishment. *Id.* at ¶ 3. Plaintiff does not seek release, but rather he seeks parole consideration using the substantive parole standards and law in effect when he was convicted. *Id.* at ¶11.

On July 1, 1996, Senate Bill 2 and Amended Senate Bill 269 became effective. These sentencing statues were not retroactive. *Id.* at ¶ 23.  Inmates sentenced for offenses committed prior to July 1, 1996 are referred to as "Old Law" inmates. *Id.* at ¶ 24. Since July 1, 1996, the Ohio Adult Parole Authority has frequently changed the substantive standards for determining parole eligibility and suitability that it applies to "Old Law" inmates. *Id.* at ¶ 26.  These changes to the parole board's substantive standards were designed to increase the punishment for the crimes committed by "Old

2

Law" inmates. *Id.* at ¶ 31. Retroactive application of these changes has denied plaintiff meaningful parole review. *Id.* at ¶ 62.

On March 1, 1998, the parole board applied the new guidelines to his case. The parole board determined that plaintiff had to 270 to 330 months before being eligible for parole. Plaintiff was not given credit for the 15 years that he had served on his prior sentence. Plaintiff was not permitted to appear before the full board hearing. Shortly thereafter, plaintiff was informed that he was being continued until July 2008. *Id.* at ¶ 76.

In April 2003, following the *Layne* decision, the parole board rescinded its former decision and granted plaintiff another hearing. At that time, the parole board assessed the maximum amount of time in his guideline range, gave him a continuance of 50 months to account for the time he served beyond the maximum of his guideline range, and gave him a second continuance of additional time to serve before his next parole hearing. *Id.* at ¶77.

Plaintiff has been subjected to multiple parole hearings and received multiple continuances with no end in sight. According to plaintiff, under the parole standards in effect at the time he was sentenced, plaintiff would have been released at his second hearing, or after serving the minimum on his current conviction and completing up to a five year continuance for the parole violation, approximately 12 years of incarceration. *Id.* at ¶82(a). Under the 1998 parole guidelines, plaintiff's guideline range was 60-84 months. This range was disregarded at his July 1998 hearing, and he was placed in an

3

offense category higher than what his offense of conviction called for. His guideline range was elevated even further to 270-330 months, and he was informed that he would have to serve 330 months. *Id.* at ¶82(b).

## II. Plaintiff's Objections

Plaintiff argues that the evidence shows that application of the 1996 law and the withholding of legal entitlements in parole proceedings that were in effect prior to July 1, 1996 have resulted in an actual increase in punishment. Plaintiff maintains that under the prior administrative code, he was entitled to appear before the full board and receive a half time review. Plaintiff contends that defendants have no intention of ever granting him parole as evidenced by statements made to his family members. This demonstrates defendants' prejudice towards him and indicates that he will never be afforded a fair and meaningful parole hearing. Plaintiff contends that defendants have penalized him for being a member of the Wiccan faith. Plaintiff argues that his Eighth Amendment claim is based on the fact that he has been subjected to excessive chastisement and excessive criminal sanctions. Defendants have completed decision sheets with information that made it looks as though he was given meaningful consideration, yet they had no intention of determining that he was suitable for release.

Plaintiff objects to the Magistrate Judge's assumption that there is no dispute with respect to material facts because defendants maintain that they are abiding by and applying the Ohio Administrative Code provisions that have been in effect since 1975, but plaintiff maintains they are not applying those provisions that are beneficial to him.

Plaintiff maintains that his due process claim is based on defendants purposefully and intentionally withholding the guaranteed benefits of the Ohio Administrative Code provisions that they state they are using in his parole hearings. With respect to his Ex Post Facto claim, plaintiff argues that he has provided sufficient evidence to demonstrate that the application of the post July 1, 1996 parole related laws have unconstitutionally extended his punishment.

Plaintiff also argues that he has been denied the benefit of discovery to assist him in this case.

### III.   Summary Judgment

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 247-248.  The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

## IV. Discussion

Cynthia Mausser, Chair of the Ohio Adult Parole Authority, provided an affidavit in support of defendants' motion for summary judgment (doc. 74-2.) Plaintiff is serving an aggregate sentence of six years to life. Mausser Aff. at ¶ 4. In 1974, plaintiff was convicted of first degree murder for shooting his girlfriend. *Id.* The trial court sentenced him to fifteen years to life. On January 3, 1989, plaintiff was released on parole. On November 19, 1991, while under parole supervision, plaintiff pleaded guilty to felonious assault after shooting another girlfriend. The trial court sentenced plaintiff to an indefinite term of six to fifteen years plus an additional three years for a firearm

specification. Because plaintiff's second offense occurred while he was on parole, his two sentences were aggregated. Mausser Aff. at ¶ 5. As a result, plaintiff is serving an aggregate sentence of six years to life. *Id.*

### A. Due Process

The Magistrate Judge correctly stated that a plaintiff bringing a § 1983 claim for violation of his right to procedural due process must show that the state deprived him of a constitutionally protected interest in life, liberty, or property without due process of law. *Zinermon v. Burch*, 494 U.S. 113 (1990). Under the Fourteenth Amendment, the state may not interfere with a constitutionally cognizable liberty or property interest without due process of law. *Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The United States Supreme Court, however, has held that there is no constitutional right of a convicted person to be paroled before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). The state of Ohio has created a completely discretionary parole system, and, as a result, under an Ohio inmate has no liberty interest in parole eligibility under Ohio law. Ohio Rev. Code § 2967.03; *Jago v. Van Curen*, 454 U.S. 14, 20-21 (1981); *Inmates of Orient Corr. Inst. v. Ohio State Parole Auth.*, 929 F.2d 233, 234-37 (6th Cir. 1991).

### B. Ex Post Facto

In *Michael v. Ghee*, 498 F.3d 372 (6th Cir. 2007), the Sixth Circuit Court of Appeals described Ohio's new parole guidelines, enacted by Senate Bill 2:

> Under Ohio's former sentencing law, Ohio inmates were given an indeterminate sentence comprised of a minimum and a maximum sentence. An inmate became eligible for parole after serving his or her minimum sentence, minus credit for good behavior. Parole decisions were delegated to the Ohio Adult Parole Authority ("OAPA"). It determined when release was appropriate for each inmate. In 1995, Ohio adopted a new sentencing system for crimes committed after July 1, 1996. Under the new law, indeterminate sentences were abandoned in favor of fixed terms of incarceration determined by the defendant's presiding judge. The new system does not apply retroactively to Ohio inmates sentenced under the former sentencing scheme.
>
> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence.

*Id*. at 373-74 (citations omitted). The *Michael* court found that an inmate can challenge the retroactive application of the 1998 Ohio guidelines where they create a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. at 384, quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000).

> Plaintiffs can satisfy this burden in one of two ways. First, plaintiffs can establish an ex post facto violation if they can show that the guidelines, on their face, show a significant risk of increased incarceration. Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]."

*Michael*, 498 F.3d at 384, quoting *Garner*, 529 U.S. at 255.  However, the "focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage', [...] but on whether [the] change [...] increases the penalty by which a crime is punishable."  *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995).  *See also Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010).

Ohio's parole system grants considerable decision-making discretion to the parole board.  Instead of a deterministic scheme compelling certain results based upon a particular crime and particular time served, it instructs the parole board in what factors it shall take into account, and then grants it the authority to make its own determination as to whether an inmate should not be released.  One such possible determination is that "[t]here is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society." (*Id.*, quoting O.R.C. §5120:1-1-07(A)(2)).  In *Foster v. Booker*, the Sixth Circuit Court of Appeals addressed a similar challenge to Michigan's parole system, which had changed in 1992 to implement tougher standards such as less frequent hearings.  The *Foster* court found, however:

> To the extent that plaintiffs have shown they face a significant risk of increased punishment under the new parole regime, plaintiffs have not shown that this risk is attributable to statutory changes to the parole process and not to a change in the way the Board legitimately exercises its

10

>  discretion.  The decision whether to grant parole has always been within the Board's discretion. [...]
>
>  Despite the fact that the scope of the Board's discretion has remained the same, plaintiffs argue that, in practice, the new Board applied a harsher standard than the old Board when deciding whether to grant parole.  However, plaintiffs' contentions do not make out an ex post facto violation.
>
>  If the Parole Board decided within its discretion to get tougher, that could hardly amount to an ex post facto violation as long as it was within the Parole Board's discretion to get tougher.

595 F.3d at 362.

The Magistrate Judge correctly concluded that plaintiff has offered no evidence which, if credited by the trier of fact, would demonstrate that the guidelines unconstitutionally increased his sentence. Although plaintiff maintains that he would have been released earlier under the old guidelines, this statement is pure conjecture. He has not offered any evidence demonstrating that the guidelines, on their face, show a significant risk of increased incarceration or evidence showing that their application result in a longer period of incarceration than under the earlier guidelines. The September 5, 2008 decision of the Ohio Parole Board states that Morehouse was not found suitable for release based on his felony conviction for shooting a female victim while on parole for murder. The decision indicated that releasing plaintiff at that time would not be in the welfare and security of society. Exh. 2B attached to Complaint. Plaintiff has been eligible for parole since 1998 and has had several hearings to determine his suitability for parole. It is within the discretion of defendant to consider the fact that he committed a similar crime when released on parole for his earlier

11

conviction when determining his suitability for release on parole. Furthermore, simply because his period of incarceration is beyond the minimum time served does not mean that he was entitled to release on parole.

On similar facts, this Court has held that a prisoner has failed to offer evidence establishing an *ex post facto* violation. *Ridenour v. Collins,* 692 F.Supp.2d 827, 836-37 (S.D. Ohio 2010). The same conclusion applies here.

### C.    Eighth Amendment

Plaintiff also fails to state a claim for cruel and unusual punishment under the Eighth Amendment because "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)(quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Plaintiff's assertions that he has been subjected to excessive chastisement does not rise to a violation of the Eighth Amendment.

### V.    Conclusion

For the reasons stated above, plaintiff Morehouse's December 6, 2010 objections to the Magistrate Judge's November 19, 2010 Report and Recommendation are OVERRULED and defendants' September 1, 2010 motions for summary judgment and to stay discovery (docs. 74 & 75) are GRANTED. The Clerk of Court is DIRECTED to enter JUDGMENT for defendants.

    s/Algenon L. Marbley
Algenon L. Marbley
United States District Judge